UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------X

S.H., individually, and S.H., on behalf of K.H., a child
with a disability,

                           Plaintiffs,

              -v-

NEW YORK CITY DEPARTMENT OF EDUCATION,

                          Defendant.

----------------------------------------------------------------------X

21-cv-4967 (LJL)

OPINION AND ORDER

```
┌────────────────────────────────────┐
│ USDC SDNY                           │
│ DOCUMENT                            │
│ ELECTRONICALLY FILED                │
│ DOC #:_____               │
│ DATE FILED: 01/26/2022              │
└────────────────────────────────────┘
```

LEWIS J. LIMAN, United States District Judge:

Plaintiff S.H. ("Plaintiff"), individually and on behalf of K.H., a child with a disability,

moves for summary judgment on its complaint seeking attorneys' fees against defendant New

York City Department of Education ("Defendant"). Dkt. No. 13.

For the following reasons, the motion for summary judgment is granted in part and

denied in part.

## BACKGROUND

The following facts, gleaned from the parties' Rule 56.1 statements and the

administrative record in this case, are undisputed for purposes of this motion.

K.H. is a child with a disability under the Individuals with Disabilities Education Act

("IDEA"), 20 U.S.C. § 1401(3)(A). *See* Dkt. No. 24 ¶ 3. S.H. is the parent of K.H., as defined

by the IDEA, 20 U.S.C. § 1401(23). *See* Dkt. No. 24 ¶ 4.

Plaintiff filed a due process complaint ("DPC") on or about September 17, 2018 and

demanded a due process hearing pursuant to 20 U.S.C. § 1415(f)(1). *See* Dkt. No. 24 ¶ 8. The

DPC sought a finding that Defendant did not provide K.H. with a free appropriate public

education pursuant to the IDEA during the school years 2016–2017, 2017–2018, and 2018–2019 and, as relief, demanded an independent neuropsychological evaluation, compensatory related and educational services, and that the Defendant convene the Committee on Special Education ("CSE") to review the independent neuropsychological examination and develop an appropriate individualized education program ("IEP") for K.H.  *Id.* ¶¶ 10–11; Dkt. No. 16-1 at 5–6.  The parties entered into a partial resolution agreement that was fully executed on December 27, 2018. Dkt. No. 24 ¶ 12.  Defendant agreed to fund the independent neuropsychological evaluation at a rate not to exceed $4,500, and to issue a related services authorization for the compensatory speech-language services for a total of eighty-three sessions.  Dkt. No. 15 ¶ 51.

From April 2019 through July 2019, K.H. underwent a neuropsychological evaluation pursuant to the partial resolution agreement.  Dkt. No. 16 ¶ 38.

After the conclusion of the neuropsychological evaluation, Plaintiff's counsel prepared affidavits to be introduced in lieu of examination for the doctor performing the evaluation as well as for Lisa LaFata ("LaFata") of Kid Success, Inc., which had previously provided tutoring services to K.H. and made recommendations for compensatory services; counsel provided the affidavits in draft form to Defendant.  Dkt. No. 16 ¶¶ 39–40.  Both witnesses provided testimony regarding the compensatory services needed for K.H. based on the neuropsychological evaluation.  Dkt. No. 16-7 at 23.  Thereafter, Defendant indicated that it did not wish to conduct an examination of the doctor but only of LaFata.  Dkt. No. 16 ¶ 41.

On March 20, 2020, the impartial hearing officer ("IHO") scheduled a hearing date for April 21, 2020, but Plaintiff moved for summary judgment for the matter to be resolved without need for a hearing.  *Id.* ¶¶ 42–43.  There followed summary judgment briefing from April to May 2020 before the IHO.  *Id.* ¶¶ 44–45; Dkt. Nos. 16-4, 16-5.  On June 19, 2020, the IHO denied the

cross-motions for summary judgment by each of Plaintiff and Defendant.  Dkt. No. 16 ¶ 46; Dkt.

No. 16-6.  The IHO found that there were issues of fact related to the Defendant's argument that

Plaintiff's claim for the 2016–2017 school year was time-barred and that the relief requested by

the parent was "disputed by the District who has raised significant issues of fact that cannot be

resolved on the Parent's motion."  Dkt. No. 16-6 at 4.

On July 8, 2020, after Defendant had indicated an intent to litigate the issue of requested

compensatory educational services and to present a witness on the issue, the IHO held a due

process hearing which was followed by submission of closing briefs.  Dkt. No. 16 ¶¶ 47, 49, 52;

Dkt. Nos. 16-7, 16-8.  Plaintiff entered seventeen documentary exhibits into evidence, including

the two affidavits.  Dkt. No. 16 ¶ 51.  Defendant entered fourteen documentary exhibits into

evidence and called one witness to testify regarding the appropriateness of the amount of

compensatory educational services and conducted a cross-examination of Plaintiff's witness,

LaFata.  *Id.*  A direct examination, cross-examination, redirect examination, and recross

examination were conducted of Defendant's witness.  *Id.*  At the hearing, Defendant conceded

that it denied K.H. a free appropriate public education for all three school years in question and

that K.H. was entitled to compensatory educational services for the 2017–2018 and 2018–2019

school years.  *Id.* ¶ 50.  However, Defendant also claimed that all relief for the 2016–2017 school

year was time-barred by the applicable statute of limitations and contested the amount of

compensatory academic services requested by Plaintiff.  *Id.*  Plaintiff submitted a 33-page

closing brief.  Dkt. No. 16-7.  Defendant submitted a 15-page closing brief.  Dkt. No. 16-8.

On September 8, 2020, the IHO issued a findings of fact and decision ("FOFD").  Dkt.

No. 16 ¶ 53; Dkt. No. 16-9.  The IHO found that Plaintiff's claims with respect to the 2016–2017

school year were timely made and not barred by the statute of limitations.  Dkt. No. 16 ¶ 54; Dkt.

No. 16-9 at 10.  The IHO also ordered Defendant to fund a total of 1,650 hours of compensatory academic services broken down into 600 hours for reading, 450 hours for math, and 600 hours for writing, as well as 150 hours of compensatory counseling services.  Dkt. No. 16 ¶ 55; Dkt. No. 16-9 at 12.  The IHO found, "the Parent sustained their burden of proof on the issue of compensatory services."  Dkt. No. 16-9 at 12.  In total, Plaintiff's counsel secured over $208,550 worth of relief for Plaintiff, comprised of $181,500 for compensatory academic services and $22,500 for compensatory counseling services, and also obtained a change of placement to an appropriate nonpublic school.  Dkt. No. 15 ¶¶ 53–55.

Kenneth Bush of the Cuddy Law Firm PLLC ("CLF") was lead counsel for Plaintiff from September 2017 through December 2018.  Dkt. No. 15 ¶ 116.  Upon counsel Bush's departure from CLF in January 2019, Michael Cuddy and Jason Sterne served as interim lead attorney until Benjamin Kopp was assigned the matter in April 2019.  *Id.* ¶ 117.  Counsel Kopp remained lead attorney for the remainder of the administrative matter, including conducting the hearing.  *Id.*

Following the issuance of the FOFD, Mr. Kopp delegated tasks regarding implementation of the FOFD to a paralegal at CLF who acted under his supervision.  Dkt. No. 16 ¶ 56.

## DISCUSSION

The only issue that remains in this case is Plaintiff's request for attorneys' fees and costs.[1]  Both parties agree the matter can be resolved by summary judgment.

## I.    The Relevant Standards

The standards are well-established.

Under Federal Rule of Civil Procedure 56(a), a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is

---

[1] Plaintiff withdraws the causes of action for violations of 42 U.S.C. § 1983 and 20 U.S.C. § 415(b)(6) related to the failure to implement the FOFD.  Dkt. No. 20 at 1.

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113–14 (2d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "The movant bears the burden of 'demonstrat[ing] the absence of a genuine issue of material fact.'" *Id.* at 114 (quoting *Celotex*, 477 U.S. at 323). In deciding a motion for summary judgment, the Court must "construe the evidence in the light most favorable to the non-moving party, and draw all reasonable inferences in its favor." *Gilman v. Marsh & McLennan Cos., Inc.*, 826 F.3d 69, 73 (2d Cir. 2016).

If the movant meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). It may not rely on "mere speculation or conjecture as to the true nature of the facts," *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted), or "on the allegations in [its] pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible," *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citation omitted). Rather, to survive a summary judgment motion, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record," Fed. R. Civ. P. 56(c)(1)(A), and demonstrating more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). If "the party opposing summary judgment propounds a reasonable conflicting interpretation of a material disputed fact," summary judgment must be denied. *Schering Corp. v. Home Ins. Co.*, 712 F.2d 4, 9–10 (2d Cir. 1983).

"The IDEA aims 'to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs.'"  *A.R. ex rel. R.V. v. N.Y.C. Dep't of Educ.*, 407 F.3d 65, 72 (2d Cir. 2005) (quoting 20 U.S.C. § 1400(d)(1)(A)).  To that end, the statute provides that "the court, in its discretion, may award reasonable attorneys' fees as part of the costs to a prevailing party who is the parent of a child with a disability."  20 U.S.C. § 1415(i)(3)(B)(i), (i)(I).  The statute mandates the fees awarded "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished.  No bonus or multiplier may be used in calculating the fees awarded . . . ."  *Id.* § 1415(i)(3)(C).  The award thus must be "reasonable" and may not be based on rates exceeding those "prevailing in the community."[2]

The IDEA's definition of a "reasonable attorney's fee" is interpreted consistently with other civil rights fee-shifting statutes.  *A.R. ex rel. R.V*, 407 F.3d at 75 ("[W]e 'interpret the IDEA fee provisions in consonance with those of other fee-shifting statutes.'" (quoting *I.B. ex rel. Z.B. v. N.Y.C. Dep't of Educ.*, 336 F.3d 79, 80 (2d Cir. 2003) (per curiam))); *see also S.N. ex rel. J.N. v. Pittsford Cent. Sch. Dist.*, 448 F.3d 601, 604 (2d Cir. 2006).  The purpose of allowing attorneys' fees in a civil rights action "is to ensure effective access to the judicial process for persons with civil rights grievances."  *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983).  "When a plaintiff succeeds in remedying a civil rights violation, . . . he serves 'as a "private attorney general," vindicating a policy that Congress considered of the highest priority.'"  *Fox v. Vice*, 563 U.S. 826, 833 (2011) (quoting *Newman v. Piggie Park Enterps., Inc.*, 390 U.S. 400, 402 (1968) (per curiam)).  "[T]he fee-shifting feature of the IDEA – including the authority to award

---

[2] As a threshold matter, Defendant does not dispute that Plaintiff is entitled to an award of attorneys' fees.  Rather, Defendant disputes the amount of the award.  *See, e.g.*, Dkt. No. 23 at 21.

reasonable fees for the fee application itself – plays an important role in 'attract[ing] competent

counsel' to a field where many plaintiffs with meritorious cases could not afford to pay such

counsel themselves." *G.T. v. N.Y.C. Dep't of Educ.*, 2020 WL 1516403, at \*10 (S.D.N.Y. Feb.

12, 2020) (quoting *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 176 (2d Cir. 2009)).

In determining a reasonable fee, "[t]he district court must ascertain whether 'the

requested rates are in line with those prevailing in the community for similar services by lawyers

of reasonably comparable skill, experience and reputation.'" *Chambless v. Masters, Mates &

Pilots Pension Plan*, 885 F.2d 1053, 1058–59 (2d Cir. 1989) (quoting *Blum v. Stenson*, 465 U.S.

886, 896 n.11 (1984)).  "The reasonable hourly rate is the rate a paying client would be willing to

pay . . . bear[ing] in mind that a reasonable, paying client wishes to spend the minimum

necessary to litigate the case effectively." *Ortiz v. City of New York*, 843 F. App'x 355, 359 (2d

Cir. 2021) (quoting *Lilly v. City of N.Y.*, 934 F.3d 222, 231 (2d Cir. 2019)).  The Court also

considers the *Johnson* factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions;
> (3) the level of skill required to perform the legal service properly; (4) the
> preclusion of employment by the attorney due to acceptance of the case; (5) the
> attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the
> time limitations imposed by the client or the circumstances; (8) the amount
> involved in the case and the results obtained; (9) the experience, reputation, and
> ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and
> length of the professional relationship with the client; and (12) awards in similar
> cases.

*Lilly*, 934 F.3d at 228.  "A district court need not recite and make separate findings as to all

twelve *Johnson* factors, provided that it takes each into account in setting the attorneys' fee

award." *C.D. v. Minisink Valley Cent. Sch. Dist.*, 2018 WL 3769972, at \*4 (S.D.N.Y. Aug. 9,

2018) (quoting *E.F. ex rel. N.R. v. N.Y.C. Dep't of Educ.*, 2014 WL 1092847, at \* 3 (S.D.N.Y.

Mar. 17, 2014)); *see also C.B. v. N.Y.C. Dep't of Educ.*, 2019 WL 3162177, at \*5 (S.D.N.Y. July

2, 2019) (same).

After determining a reasonable hourly rate, the Court multiplies "that rate by the number of hours reasonably expended to determine the presumptively reasonable fee." *Lilly*, 934 F.3d at 230. "To calculate . . . attorneys' fees, courts apply the lodestar method, whereby an attorney fee award is derived by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *A.R. ex rel. R.V.*, 407 F.3d at 79 (internal quotation marks omitted) (quoting *G.M. v. New Britain Bd. of Educ.*, 173 F.3d 77, 84 (2d Cir. 1999)). "[T]here is . . . a strong presumption that the lodestar figure represents a reasonable fee." *Id.* (internal quotation marks omitted) (quoting *G.M.*, 173 F.3d at 84); *accord I.B. ex rel. Z.B.*, 336 F.3d at 80.

The Second Circuit has stated:

In *Arbor Hill* [522 F.3d 182 (2d Cir. 2008)], we attempted to . . . clarify our circuit's fee-setting jurisprudence. We instructed district courts to calculate a presumptively reasonable fee by determining the appropriate billable hours expended and setting a reasonable hourly rate, taking account of all case-specific variables. We explained with respect to the latter:

[T]he district court, in exercising its considerable discretion, [should] bear in mind all of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate. The reasonable hourly rate is the rate a paying client would be willing to pay. In determining what rate a paying client would be willing to pay, the district court should consider, among others, the *Johnson* [488 F.2d 714 (5th Cir. 1974)] factors; it should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively. The district court should also consider that such an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case. The district court should then use that reasonable hourly rate to calculate what can properly be termed the "presumptively reasonable fee."

In the wake of *Arbor Hill*, we have consistently applied this method of determining a reasonable hourly rate by considering all pertinent factors, including the *Johnson* factors, and then multiplying that rate by the number of hours reasonably expended to determine the presumptively reasonable fee. It is only after this initial calculation of the presumptively reasonable fee is performed that a district court may, in extraordinary circumstances, adjust the presumptively reasonable fee when it does not adequately take into account a factor that may properly be considered in determining a reasonable fee.

*Lilly*, 934 F.3d at 229–30 (internal quotation marks and citations omitted).

The Court's task is to make "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994). At the same time, however, in reviewing a fee application, "trial courts need not, and indeed should not, become green-eyeshade accountants." *Fox*, 563 U.S. at 838. "The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Id.* "[T]he fee applicant bears the burden of establishing entitlement to an award, and documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437; *C.D.*, 2018 WL 3769972, at *7. The fee applicant must "establish his hourly rate with satisfactory evidence—in addition to the attorney's own affidavits." *Chambless*, 885 F.2d at 1059 (internal quotation marks and citation omitted). Where the fee applicant presents no evidence to support the timekeeper's relevant qualifications, "courts typically award fees at the bottom of the customary fee range." *C.D.*, 2018 WL 3769972, at *7 (citing cases).

## II.    Application of the Standards

Plaintiff seeks attorneys' fees of $63,720 consisting of $45,312.50 for the administrative phase of the matter and $18,407.50 for the federal component of the matter. Dkt. No. 15 ¶ 132. It arrives at those figures by asking the court to calculate a reasonable attorneys fee for Andrew Cuddy, Jason Sterne, Michael Cuddy, and Nina Aasen of $550 an hour, Kevin Mendillo at $450 an hour, Justin Coretti and Kenneth Bush at $425 an hour, Benjamin Kopp at $400 an hour, Erin Murray at $375 an hour, and the paralegals at $225 an hour. *Id.* It claims 115.8 hours of work on the administrative phase, with 96.8 of those hours billed by attorneys. *Id.* It claims 50.6 hours at the federal court level, with 43.2 of those hours billed by attorneys. *Id.* Plaintiff claims a total of costs of $876.95. *Id.*

Defendant argues that the reasonable hourly rates for Nina Aasen, Andrew Cuddy, Michael Cuddy, and Jason Sterne is no more than $360 an hour, Dkt. No. 23 at 10; the reasonable hourly rate for Justin Coretti, Benjamin Kopp, Kenneth Bush, Kevin Mendillo, and Erin Murray is no more than $200 an hour, *id.* at 11; and the reasonable hourly rate for the paralegal staff is no more than $100 an hour for less experienced paralegals and between $125 an hour and $150 an hour for more experienced paralegals, *id.* at 11–12.  It also argues that the hours for the administrative hearing phase of 115 hours of work (with 96 hours billed by attorneys) is excessive and the hours billed for the federal action should be reduced by 50%, *id.* at 19.

Andrew Cuddy has been employed in CLF's law firm since 1996, Michael J. Cuddy since 2009, Kevin Mendillo since 2014, Justin Coretti since 2015, Benjamin Kopp since 2018, Erin Murray since 2020, and Kenneth L. Bush was employed from February 2016 through January 2019.  Dkt. No. 15 ¶¶ 100, 102.  Benjamin Kopp is currently a fifth-year associate, having been admitted to the practice of law in the State of New York in 2016 and having practiced for two years at a general litigation firm for two years prior to joining CLF.  Dkt. No. 16 ¶¶ 28–29.  Erin Murray is a 2019 law school graduate who was admitted to the practice of law in New York in 2020 and who had experience advocating for children and children's education needs while working for the Children's Home Society of Florida prior to entering law school.  Dkt No. 17 ¶¶ 20–24.

The Court has reviewed the billing records for the administrative phase in detail.  It concludes that Andrew Cuddy and Nina Aasen's time should be billed at $420 an hour, Jason Sterne and Michael Cuddy's time at $400 an hour, Justin Coretti's time at $300 an hour, and Benjamin Kopp and Kenneth Bush's time at $250 an hour.  With respect to the paralegals, and

consistent with the Court's prior opinions, it will award fees to counsel at a rate of $125 an hour for the time of Shobna Cuddy and Sarah Woodard and $100 an hour for the other paralegals. The Court also concludes that Kenneth Bush's time should be reduced by one-quarter because he billed more than a reasonable number of hours to the case.  Even crediting that review of the records and the law would have been required prior to finalizing that document, the number of hours is excessive and should be reduced by one-quarter.  The time billed by the other paralegals and attorneys is reasonable.

Accordingly, for the administrative phase, the Court will award $24,455 for attorney time and $1,995 for the time of the paralegals for a total of $26,450 in fees.  The Court will also award $474.95 for costs.[3]  The total award for the administrative phase is $26,924.95.

For the federal litigation component, the Court will use the same billing rate for Andrew Cuddy, Benjamin Kopp, and Shobna Cuddy.  For Kevin Mendillo, the appropriate billing rate is $300 an hour and, for Erin Murray, it is $225 an hour.  For the paralegals other than Shobna Cuddy, the appropriate rate is $100 an hour.  The Court will reduce the total fees for the federal litigation component by one-quarter to reflect work done on implementation by attorneys that, from the billing records, could have been done by paralegals, and for excessive time reviewing the file.  Before any percentage reduction, the award for attorney time would be $10,316.50.  The award for paralegal time would be $777.50.  Before reduction, the total fees are $11,094.  With the reduction by one-quarter, Plaintiff is entitled to fees of $8,320.50 for the federal component. Plaintiff is also entitled to the $402 for costs for a total of $8,722.50.  The total award is $35,647.45.

---

[3] A district court may award reasonable costs to the prevailing party in IDEA cases.  *See* 20 U.S.C. § 1415(i)(3)(B).

The Court's calculation of a reasonable attorneys' fee is consistent with that which the Court has calculated in prior litigation but also takes into account the *Johnson* factors and the time value of money (or, more precisely, awards fees at current rates). In *M.H. v. N.Y.C. Dep't of Educ.*, 2021 WL 4804031, at *13–15 (S.D.N.Y. Oct. 13, 2021), the Court concluded that fees should be calculated at the following rates for work done during the approximate time period 2017–2018: $420 an hour for Nina Aasen, Andrew Cuddy, and Jason Sterne, $280 an hour for Justin Coretti and Kevin Mendillo, $200 an hour for Benjamin Kopp, $125 an hour for experienced paralegals, and $100 an hour for paralegals without extensive experience. In *A.G. v. N.Y.C. Dep't of Educ.*, 2021 WL 4896227, at *6 (S.D.N.Y. Oct. 19, 2021), the Court considered work done in the 2018–2019 time period. The Court awarded $420 for Andrew Cuddy, $400 for Jason Sterne, $300 for Justin Coretti and Kevin Mendillo, $200 for a junior attorney, $125 for experienced paralegals, and $100 for other paralegals and non-lawyers. *Id.* at *7–8.

The Court recognizes that the rate it is using for Benjamin Kopp and Kenneth Bush is higher than the $200 an hour it used for Benjamin Kopp in *M.H.* The increase reflects the greater experience the lawyers had by the time they performed the work in this case, the fact that—especially for the work of Benjamin Kopp—the work was of greater complexity involving a complicated statute-of-limitations issue and disputed issues regarding compensatory relief, and that Plaintiff achieved substantial success. Those factors also justify the greater rate for Kenneth Bush than that used for Benjamin Kopp in the *M.H.* case. As to Erin Murray, the award recognizes both the success in this case and that she had substantial experience advocating for children before entering law school.

The rates also reflect consideration of the *Johnson* factors. The rates are lower than the rates charged by CLF to paying clients but, taking into account the matriculation of counsel (as

counsel becomes more senior) and the date of the award, it is comparable to awards in similar

cases.   The time and labor required was modest as was the novelty and difficulty of the

questions (save, perhaps, for the statute-of-limitations question addressed by attorney Benjamin

Kopp).  The case involved a short, single-day hearing with two witnesses where counsel

examined live only one witness.  Moreover, Defendant conceded liability at the due process

hearing.  In that respect, the case is comparable to *M.D. v. N.Y.C. Dep't of Educ.*, 2018 WL

4386086, at *3 (S.D.N.Y. Sept. 14, 2018), where liability was "essentially uncontested."  Higher

rates might be appropriate in a case of greater complexity or difficulty or where more time was

required and thus more risk taken on.  There is nothing about the other *Johnson* factors that

makes this case exceptional.

The award does not accept in full the argument of either side.  Plaintiff seeks a far larger

award; Defendant asks the Court to grant far less in fees.  The Court does not accept the

arguments of either side.

Plaintiff submits an expert report of Steven Tasher ("Tasher") that finds the hours billed

are reasonable in light of the skills required to litigate the cases, the importance of the rights

being enforced, the required workload, and the results obtained.  Dkt. No. 19 ¶ 30.  The report

also relies on fifteen engagement letters and corresponding invoices CLF has entered into with

private clients from 2015 to 2021.  It also relies on rates charged by three law firms—Milbank,

LLP (which was counsel in *LV v N.Y.C. Dep't of Educ.*, 700 F. Supp. 2d 510, 519 (S.D.N.Y.

2010)), Shipman & Goodwin (which represents school districts), and Riker Danzig Scherer

Hyland & Perretti LLP (which has represented boards of education).  Tasher also relies on an

engagement letter that the New York City Law Department entered with counsel to handle

certain Department of Education cases that provides rates of $400 per hour for partner and $300

per hour for associates, as well as on the Laffey matrix used in the District Court for the District of Columbia to calculate fees for complex federal litigation. Dkt. No. 19 ¶¶ 119, 125–134.

Plaintiff's arguments are of limited weight. Tasher's conclusion that the rates proposed by CLF are reasonable offers advice on an ultimate issue before the Court and thus is not admissible. *See Hygh v. Jacobs*, 961 F.2d 359, 363–64 (2d Cir. 1992). Moreover, to the extent that Tasher's declaration does more than put factual evidence of fees charged before the Court and purport to express an opinion either on the reasonableness of rates or the reasonableness of hours, Tasher has not demonstrated he has any particular expertise on the issue of IDEA litigation and that opinion would be of limited weight. The underlying facts Tasher relies on do not support that CLF's requested rates are reasonable. CLF's engagement letters are relevant to the *Johnson* factor regarding the firm's customary rate, but—assuming that they established a customary rate—that is only one of the *Johnson* factors. The question before the Court is not whether CLF has been able to extract higher fees from paying clients than that which the Court has approved here but whether the fees it charges are the prevailing rates in the community. *See M.H.*, 2021 WL 4804031, at \*7. "The reasonable hourly rate is the rate a paying client would be willing to pay 'bearing in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively.'" *Ortiz*, 843 F. App'x at 359 (quoting *Lilly*, 934 F.3d at 228). The fact that certain clients might have agreed at a point in the past that CLF should be paid at a particular rate does not establish that rate is reasonable. *M.H.*, 2021 WL 4804031, at \*11. "On a fee-shifting application . . . , the governing test of reasonableness is objective; it is not dictated by a particular client's subjective desires or tolerance for spending." *Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 52 (S.D.N.Y. 2015). As to the three law firms Tasher

mentions, the evidence before the Court fails to establish the work that they did was comparable to the work CLF was required to do in this case.

Finally, the evidence of fees sought in other cases is of limited weight "because the . . . evidence either does not substantiate such rates were actually paid (versus claimed), or where rates are asserted to have been actually paid, does not provide relevant context for such rates billed." *S.J. v. N.Y.C. Dep't of Educ.*, 2021 WL 100501, at *3 (S.D.N.Y. Jan. 12, 2021); *see also C.B.*, 2019 WL 3162177, at *5 (explaining that district courts "have decided not to rely too heavily [on such] affidavits, since they may only provide isolated examples of billing rates of a few lawyers, may leave out context that rationalizes the rates billed, and may even list rates that are not in practice ever paid by reasonable, paying clients"). Plaintiff asserts that the range found with the filed declarations supports a rate for support staff of $140 to $300 per hour, for junior associate a range of $285 to $600 per hour, for senior associates a range of $375 to $450 an hour, and for firm owners and partners a range of $500 to $1400 per hour. Dkt. No. 20 at 13–14. But the fact that counsel might seek an award at those rates and might also state that it believes the rates to be reasonable does not establish the rates are those that prevail in the community or are reasonable given the facts and risks involved in this case.

For its part, Defendant relies exclusively on fees awarded in other IDEA cases. That approach too is unacceptable. It suffers from the flaw of circularity: if the only factor a court considered in determining whether a rate was reasonable was whether another court considered that rate to be reasonable then no court would ever have to ask what the reasonable rate was in the community. The only rate that would be reasonable would be one that was approved in the past, no matter how removed and distant that rate was from the rate able to be commanded by a lawyer performing comparable work in the community. The Defendant's approach

impermissibly relies on only one *Johnson* factor—"awards in similar cases"—to the exclusion of the eleven other *Johnson* factors.  The approach of "[r]ecycling rates awarded in prior cases without considering whether they continue to prevail may create disparity between compensation available under the fee-shifting statute and compensation available in the marketplace." *Farbotko v. Clinton Cty. of New York*, 433 F.3d 204, 209 (2d Cir. 2005).  The approach defeats the objective of the fee-shifting feature of the IDEA to "'attract competent counsel' to a field where many plaintiffs with meritorious cases could not afford to pay such counsel themselves." *G.T.*, 2020 WL 1516403, at *10 (quoting *Simmons*, 575 F.3d at 176).  It also "runs the risk of freezing fee awards in place," *M.H.*, 2021 WL 4804031, at *12, preventing courts from ever increasing the fee award based on marketplace changes for the simple, and improper, reason that the increased rate is different from an earlier rate.

Thus, the Court will apply a case-specific approach to this case, consulting awards in similar cases but not following them blindly.  The length and risk of the case, its complexity, the time when the work was performed and the seniority of the lawyers performing the work, the rates prevailing today, and the other *Johnson* factors also are relevant.

Plaintiff next argues that no reduction of fees is appropriate because Defendant protected the litigation and acted unreasonably in all proceedings.  Dkt. No. 20 at 7–8.  Plaintiff points, in particular, to the fact that Defendant chose to cross-examine Plaintiff witness LaFata rather than indicate in advance to Plaintiff the topics of the cross-examination so that LaFata's presumed answers could be included in an affidavit and a hearing avoided.  *Id.*  As a result of Defendant's choice to examine LaFata in person and of LaFata's unavailability on the date originally scheduled for the hearing, a second day had to be scheduled.  *Id.*

The evidence fails to establish that Defendant unreasonably protracted the proceedings. Any party in a due process hearing has the right to present its own witnesses and to examine the witnesses for the other side. *See* 20 U.S.C. § 1415(h), (h)(2) (providing that "[a]ny party to a [due process] hearing . . . shall be accorded . . . the right to present evidence and confront, cross-examine, and compel the attendance of witnesses"). LaFata's testimony went to one of the central issues; the availability and amount of compensatory education. Defendant was not required to waive its rights to a cross-examination or to forecast its examination to Plaintiff in advance. Any "protraction" of the proceedings, moreover, was as a result of LaFata's unavailability and not as a result of any unreasonable actions by Defendant. *See A.G.*, 2021 WL 4896227, at *10 (evidence does not establish that Defendant engaged in unreasonable protraction); *M.H.*, 2021 WL 4804031, at *25 (expressing doubt that Department's actions prolonged the proceedings); *S.J.*, 2021 WL 100501, at *5 (finding that Department did not unreasonably protract the proceedings).

In any event, even if the State or a local educational agency unreasonably protracted the final resolution of the matter, Plaintiff would not be entitled to more than its reasonable attorneys' fees. *A.G.*, 2021 WL 4896227, at *10; *M.H.*, 2021 WL 4804031, at *25 (citing cases). The defendant's delay might inform whether particular hours were reasonably necessary. It would not, however, entitle counsel to be paid at a rate exceeding that prevailing in the community.

Finally, Plaintiff is not entitled to pre-judgment interest, *see M.H.*, 2021 WL 4804031, at *30–31, but is entitled to post-judgment interest, *see A.G.*, 2021 WL 4896227, at *11.

**CONCLUSION**

For the reasons stated, Plaintiff's motion is GRANTED IN PART and DENIED IN PART, and Plaintiff is awarded $35,647.45 in attorneys' fees and costs, plus post-judgment interest at the applicable statutory rate.

The Clerk of Court is respectfully directed to close Dkt. No. 13 and to close the case.


SO ORDERED.

Dated: January 26, 2022
   New York, New York                                    _____
                                                                LEWIS J. LIMAN
                                                         United States District Judge